O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GABRIELA DE LA TORRE,

Plaintiff,

v.

NANCY A BERRYHILL, Acting
Commissioner of Social Security,[1]

Defendant.

Case No. 5:17-cv-00046-KES

MEMORANDUM OPINION
AND ORDER

Plaintiff Gabriela De La Torre ("Plaintiff") appeals the final decision of the Social Security Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is AFFIRMED.

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

1

# I.

# BACKGROUND

Plaintiff filed her application for benefits on July 19, 2013, alleging a disability onset date of September 2, 2011. Administrative Record ("AR") 456-57; 468-75. On March 23, 2015, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by an attorney, appeared and testified. AR 320-44. The ALJ issued an unfavorable decision on May 14, 2015. AR 301-18.

The ALJ found that Plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine, lumbar radiculopathy, obesity, type 2 diabetes mellitus, hypertension, mood disorder, and anxiety disorder. AR 306. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work[2] with the following additional limitations:

> occasional postural activities; no ladders, scaffolds, or ropes; no
> unprotected heights or dangerous machinery; noncomplex, routine
> tasks; no tasks requiring hypervigilance; not responsible for the safety
> of others; and no jobs requiring public interaction.

AR 308.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work as a fitting room attendant, because it required public contact. AR 312. Plaintiff could, however, work as a marking clerk, Dictionary of Occupational Titles ("DOT") 209.587-034 (reasoning level 2; specific vocational preparation ["SVP"] level 2); production

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Light work may require "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." Id.

helper, DOT 524.687-022 (reasoning level 1; SVP level 2); or hand packager, DOT 559.687-074 (reasoning level 2; SVP level 2). AR 313. The ALJ therefore concluded that Plaintiff was not disabled. Id.

## II.

## ISSUES PRESENTED

Issue One: Whether the ALJ properly considered the medical opinions of (1) examining psychiatrist Nenita Belen, M.D., (2) state agency physician K. J. Loomis, D.O., and (3) state agency psychologist P.G. Hawkins, Ph.D.

Issue Two: Whether the ALJ properly considered Plaintiff's testimony. Dkt. 22, Joint Stipulation ("JS") at 4-5.

## III.

## SUMMARY OF DISPUTED MENTAL HEALTH EVIDENCE

### A. Dr. Belen.

Dr. Belen conducted a complete psychiatric evaluation of Plaintiff on September 10, 2013. AR 707-11. On mental status examination, Plaintiff appeared well kept, nourished and in no apparent distress; however she cried easily, walked with a limping gait, and had a very sad appearance. AR 703. Plaintiff maintained limited eye contact throughout the interview and exhibited some degree of psychomotor retardation. AR 709. Plaintiff's speech was soft, comprehensible, and fluent; mood was depressed, tearful, anxious, frustrated, and hopeless; and affect was congruent with mood. Id. Plaintiff's thought process was goal-directed and linear; she was alerted to person, place, and situation; she could recall three out of three items; she could do serial sevens and/or threes; she could spell "world" forward and backward; she could analyze the simple meaning of proverbs; and she displayed common sense understandings. Id.

Dr. Belen diagnosed Plaintiff with mood disorder secondary to medical problems with an assessed Global Assessment of Functioning ("GAF") score of 55. AR 710. Dr. Belen opined that Plaintiff has the following limitations:

3

• mild limitations in performing simple and repetitive tasks;

• moderate limitations in performing detailed and complex tasks;

• moderate limitations in performing work activities on a consistent basis without special or additional supervision;

• moderate limitations in completing a normal workday or work week due to mental and physical conditions due to constant pain with no relief and progressive nature of condition;

• moderate limitations in accepting instructions from supervisors and interacting with coworkers and the public; and

• moderate difficulties in handling usual stresses, changes, and demands of gainful employment.

AR 710.

**B. Dr. Loomis.**

In September 2013, state agency physician Dr. Laiken asked the following "psych question" to state agency psychiatrist, Dr. Loomis: "Recommend [claimant] capable of unskilled, non-public work. Do you agree?" AR 351. After reviewing Dr. Belen's consultative examination and the medical records in the file, Dr. Loomis responded:

> Agree with above. The claimant is capable of understanding, remembering and carrying out simple, one to two step (unskilled) tasks. The claimant is able to maintain concentration, persistence and pace throughout a normal workday/workweek as related to simple/unskilled tasks. The claimant is able to interact adequately with coworkers and supervisors, but may have difficulty dealing with the demands of the general public contact. The claimant is able to make adjustments to avoid hazards in the workspace.

AR 351.

Dr. Laiken ultimately found Plaintiff capable of "medium" exertional work.

4

AR 355.  He opined that while Plaintiff could not do her prior work as a fitting room attendant because it required public contact, she could work as an addresser (reasoning level 2; SVP level 2), nut sorter (reasoning level 1; SVP level 2) or cuff folder (reasoning level 1; SVP level 2).  Id.

**C. Dr. Hawkins.**

On February 2, 2014, upon reconsideration, state agency psychologist Dr. Hawkins adopted Dr. Loomis's opinion.  AR 376.  Dr. Hawkins characterized the prior decision as limiting Plaintiff to "SRTs with LPC," i.e., simple routine tasks with limited public contact.  Id.

# IV.

# DISCUSSION

**A.      Issue One:  The ALJ's Evaluation of the Mental Health Evidence.**

**1. Rules for Weighing Conflicting Medical Opinions and Determining an RFC.**

There are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff.  See 20 C.F.R. § 416.927(c); Lester v, Chater, 81 F.3d 821, 830 (9th Cir. 1996).  A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician.  Lester, 81 F.3d at 830.  Thus, the ALJ must give specific and legitimate reasons, based on substantial evidence in the record, for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick, 157 F.3d at 725); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  "When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict."  Matney v. Sullivan, 981

F.2d 1016, 1019 (9th Cir. 1992). "The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 956–57 (9th Cir. 2002). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Id.

A claimant's RFC is the most that claimant can still do despite his or her limitations, and is based on all the relevant evidence in the case record. 20 C.F.R. § 416.945(a); Social Security Ruling ("SSR") 96-8. In making the RFC determination, the ALJ considers those limitations for which there is record support. Batson v. Comm'r, 359 F.3d 1190, 1197-98 (9th Cir. 2003).

The RFC need not parrot the opinion of any particular doctor, but rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r of SSA, 807 F.3d 996, 1006 (9th Cir. 2015); see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (discussing the ALJ's role in weighing conflicting medical evidence and translating accepted medical opinions into "concrete restrictions"). Where, for example, a credited medical source opines that the claimant has "mild" or "moderate" difficulties with social interactions, the ALJ must decide whether the RFC should specify that the claimant can perform jobs requiring no, occasional, or frequent contact with members of the public and/or co-workers. Where a credited medical source opines that the claimant has "mild" or "moderate" difficulties maintaining concentration or pace, the ALJ must decide whether the RFC should specify that the claimant can perform work if the reasoning level and/or skill level of the work is low (i.e., "simple" work), if the work environment is "routine" (as opposed to high-stress or fast-paced), if the claimant is permitted to take breaks of specified frequency and duration, etc.

The ALJ's translation of the medical evidence into concrete functional

assessments should be affirmed if the ALJ "applied the proper legal standard and his decision is supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")).

### 2. The DOT's SVP and GED Ratings.

The DOT lists a specific vocational preparation ("SVP") time for each described occupation. Using the skill level definitions in 20 CFR §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9.

A job's level of simplicity is also addressed by its DOT general educational development ("GED") reasoning development rating. The GED reasoning scale ranges from level 1 (lowest) to level 6 (highest). The DOT defines the reasoning abilities corresponding with each of the first four levels, as follows:

Level One: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Level Two: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

Level Three: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Level Four: Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of

7

instructions furnished in written, oral, diagrammatic, or schedule form.
(Examples of rational systems include: bookkeeping, internal
combustion engines, electric wiring systems, house building, farm
management, and navigation.)

See DOT, App. C.

### 3. The ALJ's Treatment of the Opinions of Drs. Belen, Loomis, and Hawkins Regarding Plaintiff's Mental Impairments.

The ALJ noted that the state agency psychological consultants "gave great weight to Dr. Belen's opinions, assessed mild to moderate limitations, and opined the claimant was capable of simple, one to two step tasks with limited public contact." AR 311.

The ALJ, however, only gave "some weight" to the opinions of Dr. Belen and the state agency consultants. Id. The ALJ found that Plaintiff's mental impairments were not as functionally limiting as found by the state agency doctors because (1) Plaintiff "has received little treatment for psychiatric complaints" despite having access to such treatment through her health insurance provider, (2) Dr. Belen noted that Plaintiff's cognition, orientation, memory, concentration, insight, and judgment were all intact (citing AR 707-09). AR 311-12. For these reasons, rather than finding that Plaintiff was limited to one or two-step tasks (i.e., jobs at reasoning level 1), the ALJ found that Dr. Belen's "clinical findings indicate that [Plaintiff] would be capable of noncomplex, routine tasks" (i.e., jobs at reasoning level 2) that do not require hypervigilance, being responsible for others' safety, or interacting with the public. AR 312. The ALJ incorporated these limits into his RFC determination, and he did not restrict Plaintiff to work involving only one or two-step tasks. AR 308.

### 4. Analysis.

Plaintiff argues that the ALJ failed to give specific, legitimate reasons for rejecting the opinions of Drs. Belen, Loomis, and Hawkins that Plaintiff's mental

impairments render her capable of only one or two-step tasks. JS at 5.

Dr. Belen did not opine that Plaintiff was capable of only one or two-step tasks. Dr. Belen found that Plaintiff had only "mild difficulties focusing and maintaining attention" and "mild limitations performing simple, repetitive tasks," with "moderate difficulties performing detailed and complex tasks." AR 710. Dr. Belen noted that Plaintiff had completed high school and worked at Target for ten years. AR 708. Dr. Belen further noted that Plaintiff could perform self-care, some household chores, and drive. AR 709. Plaintiff did well on all the clinical tests Dr. Belen administered to assess her thought process, thought content, cognition, memory, concentration, and abstract thinking. AR 709. The ALJ did not err in determining that these clinical findings are more consistent with a limitation to work requiring reasoning level 2 rather than work with the lowest possible rating of reasoning level 1.

While Dr. Loomis did opine that Plaintiff was limited to one or two-step tasks (AR 351), and Dr. Hawkins adopted Dr. Loomis's opinion (AR 376), the ALJ gave at least two reasons for rejecting these opinions: (1) inconsistency with Dr. Belen's clinical findings, and (2) Plaintiff's limited mental health treatment. AR 311-12. The ALJ was entitled to find that the opinions of Drs. Loomis and Hawkins were inconsistent with Dr. Belen's findings, even if Drs. Loomis and Hawkins asserted that they were relying on Dr. Belen's report. Contrary to Plaintiff's assertion, when an ALJ translates clinical findings into specific functional limitations, the ALJ is not "playing doctor." See JS at 9; see also Rounds, 807 F.3d at 1006 ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). As discussed above, Dr. Belen's report is not consistent with a limitation to reasoning level 1. When confronted with the inconsistency between Dr. Belen's findings and the agency physicians' opinions, the ALJ appropriately gave more consideration to Dr. Belen's findings, because Dr. Belen interacted with Plaintiff and personally observed her

functional abilities.

Regarding Plaintiff's limited mental health treatment, Plaintiff argues that this finding is not supported by the record because her primary care doctor prescribed antidepressants. JS at 7-8, citing AR 738-39 (8/28/13 Kaiser record of Prozac prescription). At the March 2015 hearing, Plaintiff testified that she was taking medication for anxiety and depression. AR 334-35.

In September 2013, however, Dr. Loomis noted that despite an alleged disability onset date of September 2, 2011, Plaintiff had "just recently started counseling" and had no other psychiatric treatment history or hospitalizations. AR 351. The ALJ did not err in finding that Plaintiff's failure to obtain counselling, therapy, or treatment from a mental health specialist for more two years after the alleged onset date is inconsistent with the degree of functional limitation due to mental impairment that Plaintiff claims, i.e., being able to perform only one or two-step tasks.

**5. Harmless Error.**

A "decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate non-disability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

Here, even if the ALJ should have limited Plaintiff to jobs requiring only one or two-step tasks, his failure to do so was harmless error, because one of the jobs identified as appropriate for Plaintiff – production helper, DOT 524.687-022 – requires only reasoning level 1. AR 313. The DOT describes this job as follows:

**BAKERY WORKER, CONVEYOR LINE (bakery products)**

Performs any combination of following tasks in preparation of cakes along conveyor line: Reads production schedule or receives instructions regarding bakery products that require filling and icing.

10

Inspects cakes moving along conveyor to detect defects and removes

defective cakes from conveyor to reject bins. Positions cakes on

conveyor for application of filling or icing by machine, observes

filling or icing application to ensure uniform coverage, and places

additional cake layers on coated layers, depending on number of cake

layers in product. Observes cakes moving under automatic topping

shaker and cake cutting machine to ensure uniform topping

application and cutting. Smooths iced edges of cake, using spatula,

and moves decorating tool over top of designated cakes to apply

specified appearance. Notifies supervisor of malfunctions.

DOT 524.687-022.

The VE testified that a person like Plaintiff—precluded from working with dangerous machinery and performing tasks requiring hypervigilance—could perform this job. AR 342. The VE affirmed that her testimony was consistent with the DOT. AR 343.

Plaintiff argues that the VE testified inaccurately, because per the DOT's description, this job *does* require working with dangerous machinery and hypervigilance. JS at 10. Plaintiff appears to be arguing that observing cakes moving under a "cake cutting machine" involves exposure to dangerous cutting machinery, and that any work involving inspecting products on a conveyor line requires hypervigilance. Id.

The Court is not persuaded by Plaintiff's cursory argument that observing cakes moving under a cake cutting machine would necessarily involve exposure to the cutting machinery. Similarly, while inspecting products on a conveyor line undoubtedly requires some vigilance, there is no evidence that it requires a "hyper" degree of vigilance, particularly when the DOT classifies this job as requiring only reasoning level 1, meaning it involves "standardized situations with occasional or no variables …." See DOT, App. C. Therefore, even if the ALJ erred in translating

the medical evidence into a restriction to reasoning level 2 instead of reasoning level 1, that error was harmless, because it did not affect the ultimate non-disability determination.  See Cardoza v. Astrue, No. 10-936, 2011 WL 1211469, at *2 (C.D. Cal. Mar. 29, 2011) (where ALJ should have found that plaintiff's mental impairment limited her to performing one and two-step repetitive work, finding harmless error because one of three jobs identified by VE was consistent with level 1 reasoning sills).

**B.     Issue Two:  The ALJ's Evaluation of Plaintiff's Testimony.**

Plaintiff asserts that the "ALJ provides reasons [to disbelieve] the mental health symptoms alleged by [Plaintiff], but fails to do such for the physical symptoms."  JS at 21, citing AR 312.  Regarding Plaintiff's physical symptoms, Plaintiff contends that the ALJ "simply summarizes the physical medical evidence" and "failed" to give reasons for discounting Plaintiff's claim that her pain would prevent her from working even one hour per day.  JS at 32.

The ALJ gave some credence to Plaintiff's testimony concerning the limiting effects of her pain, because the ALJ disagreed with Drs. Loomis and Hawkins that Plaintiff is capable of medium work.  AR 310.  Specifically, the ALJ stated, "The claimant has disk protrusions and annular tears at L4-5 and L5-S1, and she has responded poorly to conservative treatment.  She also describes limited activities of daily living due to pain.  This tends to support an inability to perform medium work."  AR 310.  Plaintiff contends, however, that if the ALJ had properly credited her testimony concerning the limiting effects of her pain, then the ALJ would have found that she is incapable of even light work.  JS at 21, 23, citing AR 343 (VE testified that a person with Plaintiff's RFC who was off-task 20% of the time due to pain, or who required 10-15 minute breaks every hour, could not be employed).

**1. Rules for Evaluating Subjective Symptom Testimony.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.

Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958. In doing so, the ALJ may consider testimony from physicians "concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Id. at 959. If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors,

13

functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681.

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59.[3]

## 2. The ALJ's Treatment of Plaintiff's Testimony.

Plaintiff testified that she slipped and fell while grocery shopping in 2011, rupturing two discs in her back. AR 326. She has been receiving medical treatment since that time, including physical therapy and epidural injections, but her back pain has not improved. AR 328, 330. She consulted with doctors about potential back surgery, but she was told she was "too young," and she never sought a second opinion. AR 327, 335. She testified that her pain would prevent her from working even one hour. AR 331. She can, however, drive her son to school in the morning. AR 333. She can also shower without assistance. AR 336.

The ALJ found that Plaintiff's medically determinable impairments "could not reasonably be expected to cause the alleged symptoms." AR 309. The ALJ further found that Plaintiff's statements concerning the limiting effects of her pain

---

[3] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. Murphy v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 28, 2016, and therefore is not applicable to the ALJ's 2015 decision in this case. Id.

14

"are not entirely credible for the reasons explained in this decision." Id. The ALJ then summarized the mild clinical findings to demonstrate support for the conclusion that Plaintiff's impairments could not reasonably be expected to cause disabling pain. AR 309-10. The ALJ concluded that the "medical and other evidence supports a [RFC] for less than a full range of light work." AR 311. The ALJ also pointed out that both agency medical consultants had assessed Plaintiff as capable of medium work, which is inconsistent with her claim of disabling physical symptoms. AR 310. Finally, the ALJ described Plaintiff's daily activities as inconsistent with Plaintiff's being "incapacitated from work." AR 310.

**3. The ALJ Gave Clear and Convincing Reasons for Finding Plaintiff's Testimony Less than Fully Credible.**

    a.    <u>Reason One</u>: Plaintiff's Testimony was Inconsistent with Medical Opinions.

Both consulting agency doctors opined that Plaintiff could perform medium work based on her medical records. AR 355, 376. These opinions undermined Plaintiff's statements that her pain is so severe, she could not do light work for even one hour. AR 331; see <u>Stubbs-Danielson</u>, 539 F.3d at 1175 (finding that the medical evidence, including the opinions of two physicians that a claimant could work, supported the ALJ's credibility determination); <u>Moncada v. Chater</u>, 60 F.3d 521, 524 (9th Cir. 1995) (finding that a valid specific reason for rejecting Plaintiff's excessive pain complaints, among others, was doctor's opinion that plaintiff could perform sedentary work).

    b.    <u>Reason Two</u>: Plaintiff's Testimony was Inconsistent with Other Medical Evidence.

The ALJ also found that Plaintiff's complaints were inconsistent with the medical evidence. AR 312; see 20 C.F.R. § 404.1529(c)(4) (noting that in determining extent to which symptoms, such as pain, affect claimant's capacity to perform basic work activities, any inconsistencies in evidence as well as any

conflicts between claimant's statements and the rest of the evidence will be considered).  Plaintiff alleged that she had difficulty paying attention, finishing what she started, and concentrating to follow instructions.  AR 312, 495, 500.  As the ALJ pointed out, however, Plaintiff could engage fully on tasks Dr. Belen presented during her psychiatric evaluation.  AR 312, 709.  Additionally, Plaintiff could understand and answer questions during her hearing without any apparent difficulty.  AR 312; see SSR 96-7p ("[T]he adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements"); Morgan, 169 F.3d at 600 (observations of the ALJ are acceptable as long as they are not the sole basis of the credibility determination).

While these inconsistencies concern how Plaintiff's pain limited her mental functioning, the ALJ was entitled to consider inconsistencies between any of Plaintiff's statements and the evidence in evaluating the degree to credit Plaintiff's statements concerning how her pain limited her physical functioning.  See Valentine v. Comm'r of SSA, 574 F.3d 685, 693 (9th Cir. 2009) (noting that inconsistency between plaintiff's subjective symptom testimony and plaintiff's apparent abilities can provide clear and convincing reason to reject the symptom testimony).

                c.     Reason Three:  Plaintiff's Testimony was Inconsistent with Her Daily Activities.

Plaintiff's activities also did not support the extreme degree of limitation Plaintiff attributed to her pain symptoms.  AR 310; see 20 C.F.R. § 404.1529(c)(3)(i); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ may consider whether the claimant's daily activities are inconsistent with the alleged symptoms).  As the ALJ found, although Plaintiff had some limitations as reflected in the RFC determination, she could still take care of her personal hygiene, prepare simple meals, do light household chores such as ironing, cooking,

and cleaning, drive short distances, go out alone, and shop for groceries with others. AR 310, 495-99. Plaintiff's records also reveal that, as of March 2015, she was exercising 60 minutes per week at a "moderate to strenuous level." AR 1707; see Thomas, 278 F.3d at 958-59 ("The ALJ also found that [the claimant] was able to perform various household chores such as cooking, laundry, washing dishes, and shopping," which suggested the ability to perform a reduced range of light work). Everyday activities may be grounds for discrediting a claimant's testimony "to the extent that they contradict claims of a totally debilitating impairment." See Molina, 674 F.3d at 1113.

Each of these reasons is supported by substantial evidence and, considered together, explain clearly and convincingly the ALJ's decision to credit Plaintiff's pain testimony to the extent of finding her capable of only a limited range of light work, but to discredit Plaintiff's claims that her pain rendered her incapable of all work.

## V.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.


DATED:  February 06, 2018



KAREN E. SCOTT

United States Magistrate Judge